UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
KUNDANIKA N. DOSHI,                 )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )          CIVIL ACTION
                                    )          NO. 14-10282-WGY
CAROLYN W. COLVIN,                  )
Acting Commissioner of the         )
Social Security Administration,    )
                                    )
        Defendant.                  )
_____)
```

Young, D.J.                                    March 30, 2015

MEMORANDUM AND ORDER

## I.    INTRODUCTION

The plaintiff, Kundanika N. Doshi ("Doshi"), brings this

action under section 205(g) of the Social Security Act, 42

U.S.C. § 405(g), against Carolyn W. Colvin, Acting Commissioner

of the Social Security Administration (the "Commissioner").

Doshi asks this Court to review the Commissioner's final

decision denying her Social Security disability insurance

("SSDI") benefits.  Mot. Reverse and Remand Decision Social

Security Admin. ("Pl.'s Mot."), ECF No. 14; Mem. Pl. Kundanika

N. Doshi Supp. Mot. Reverse and Remand to Social Security Admin.

("Pl.'s Memorandum"), ECF No. 15.  Doshi argues that the

Administrative Law Judge (the "hearing officer") committed

errors of law when evaluating the evidence in the decision

denying her SSDI benefits.  Pl.'s Memorandum 6.  Specifically,

she claims that the hearing officer wrongly evaluated her

credibility and posed an inappropriate hypothetical question to

the vocational expert that suggested she could maneuver her hand

properly in workplace settings under the Social Security

regulations' definition of "handle."  Id. at 10.  Doshi requests

that this Court reverse the hearing officer's decision and award

her the SSDI benefits, or, in the alternative, remand the case

for further proceedings.  Id. at 12.  The Commissioner requests

that this Court affirm her decision and that Doshi's motion for

reversal be denied.  Def.'s Mot. Order Affirming Decision of

Comm'r ("Def.'s Mot."), ECF No. 16; Mem. Supp. Def.'s Motion

Affirm Comm'r ("Def.'s Memorandum"), ECF No. 17.

### A.    Procedural Posture

Doshi filed for SSDI benefits and Supplemental Security

Income in October of 2010, stating that her disability period

began June 1, 2007.  Administrative Record ("Admin R.") 16, ECF

No. 11.  She was denied on both applications on January 21, 2011

and again upon reconsideration on June 29, 2011.  Id.  After she

made a timely request on August 16, 2011, she obtained a

hearing, which was held in Boston on June 20, 2012.  Id. at 16,

28.  The hearing officer denied Doshi's SSDI claims in his

decision dated July 27, 2012.  Id. at 28.  When Doshi appealed

that decision, the Appeals Council denied her request for review

on December 11, 2013.  Id. at 1.  Doshi then filed a timely
appeal to this Court.

### B.   Facts

At the time of the hearing on July 27, 2012, Doshi was 46
years old and the mother of three children ages 15, 11, and 4.
Admin R. at 37.  Her education stopped after reaching the ninth
grade.  Id. at 34.  She worked as an assistant manager at a
McDonalds for fifteen years and as a food preparer at a Star
Market for a year.  Id.  Doshi claimed that the reason that she
left her last job was due to the fact that she could not work
with unprofessional co-workers and due to her fall on a wet
floor which resulted in a back injury.  Id. at 478.

Doshi's daily routine usually starts with assisting her
four-year-old son to prepare for pre-school.  Id. at 42.  Her
eldest son and his godmother, who lives down the street from
Doshi, sometimes help her with the four-year old.  Id. at 38.
Doshi testified that she can keep up with her four-year old son
and that taking care of him is not a burden for her.  Id. at 37-
38.  Doshi also exercises daily even though she cannot do
arduous workouts.  Id. at 168.  Some of her regular tasks
include grocery shopping, id. at 225, mopping, sweeping, and
cleaning the bathroom and her children's room.  Id. at 43.
Additionally, she irons and cooks.  Id. at 224.  When she feels
capable of accomplishing some chores, she cooks multiple meals

in anticipation of not feeling capable of carrying out tasks in upcoming days.  Id. at 43.  During the days when she feels incapable of completing any of her tasks, she naps frequently due to fatigue.  Id. at 42.  Such days are unpredictable and Doshi does not know how she will feel on any particular day. Id. at 43.  In any case, Doshi divides her daily tasks into small portions because she cannot accomplish too many in one day.  Id.  Doshi completed "Strive" job training in August 2010. Id. at 218.

### 1.    Medical History

Doshi claims that she felt symptoms of multiple sclerosis after she gave birth, but not during any of her pregnancies. Id. at 38.  The symptoms include tingling and numbness in her hands and feet.  Id.  In addition, Doshi gets dizzy when she walks.  Id. at 52.  Moreover, she lacks balance, which causes her to fall at times and sometimes break things.  Id. at 41. She also has short-term memory loss and vision problems preventing her from doing much reading.  Id. at 47.

### a.    Physical Disability

In August 2006, Doshi went to Carney Hospital because she felt tired, dizzy, and off balance.  Id. at 259.  She explained that her heart was racing from going up some stairs and she felt dizzy and lightheaded when standing up.  Id.  She stated that

her fatigue and dizziness lasted over a three-day period.  Id. at 257.

In May 2008, Doshi underwent a brain MRI after she complained about a series of headaches, optic neuropathy, and blurred vision.  Id. at 269.  The procedure discovered "three focal T2 hyperintensities in the subcortical and periventricular white matter of the left cerebral hemisphere, at least two demonstrating enhancement, suggestive of an active demyelinating process, either inflammatory, such as in multiple sclerosis or ADEM [acute disseminating encephalomyelitis], or ischemic, as in vasculitis."  Id.  At the same time, an MRI of the orbits, face, and neck showed "apparent, mild diffuse enhancement of the left optic nerve without and other associated abnormalities."  Id. at 270.

Doshi went to the emergency room in February 2009 complaining about nausea, vomiting, weakness, body aches, and general malaise that lasted four days.  Id. at 378.  The neurological examination conducted at the time was normal.  Id.

In September 2010, Dr. Brackett, Doshi's primary care physician, diagnosed her with anemia.  Id. at 296-97.  He prescribed ferrous sulfate and advised her to eat foods high in iron.  Id. at 326.

In November 2010, Dr. Ellias conducted neurological test that revealed imbalance and hyperreflexia of the arms and legs.

Id. at 368.  Dr. Ellias noted that Doshi "can walk 10-30 feet on narrow base but then may have to reach for a wall on closest side, can pivot turn 180 degrees without falling but at times may side stop as she is walking in a room."  Id.  Additionally, Dr. Ellias noted that push-pull testing was within normal limits, and that, overall, "at times [it] looks like a balance problem, at other times it does not."  Id.  Based on the tests he conducted, Dr. Ellias opined that Doshi would be able to drive without any potential safety issues.  Id.

In December 2010, Doshi's brain MRI showed "[m]ultiple FLAIR hyperintense foci without abnormal enhancement."  Id. at 406-07.  The interpreting physician found that "[t]hese findings are nonspecific and suggestive of areas of edema/gliosis.  These findings can be seen [as] demyelinating diseases such as multiple sclerosis, chronic small vessel ischemic changes, migraines, vasculitis, among others."  Id. at 407.

In March 2011, Dr. Brackett stated that he could not determine whether Doshi's dizziness related to her anemia.  He described her anemia as "stable" at that time.  Id. at 438.

In June 2011, Dr. Ellias detected hyperreflexia again after Doshi reported balance problems.  Id. at 505.  Based on Dr. Ellias' opinion, such findings were most consistent with multiple sclerosis.  Id.  In November 2011, he observed that Doshi's "walking, balance[,] reflexes and coordination are

6

better than any previous visits," Id. at 513, and further noted
her ongoing aversion to medication since she preferred "natural
remedies." Id. at 512.

In January 2012, Dr. Brackett commented that Doshi could
lift or carry twenty pounds occasionally and ten pounds
frequently. Id. at 504. He further commented that she could
stand or walk about four hours and sit at least six hours in an
eight-hour day, and had no significant limitation to repetitive
handling and fingering. Id. at 503-04. Dr. Brackett, however,
remarked that Doshi would likely be absent from work about four
times per month due to "optic nerve dysfunction due to M.S.,
life stressors, family discord, [and] DCF involvement." Id. at
504. In May 2012, Dr. Ellias diagnosed Doshi with multiple
sclerosis because she met the 11.09 listing requirement for it.
Id. at 533.

### b. Psychological Disability

Emrie Cohen, a licensed clinical psychologist, examined
Doshi on a consultative basis in June 2011. Id. at 473-82. He
opined that Doshi's "behavioral and general attitude were
appropriate but her manner was childlike but also suspicious."
Id. at 473. Mr. Cohen remarked that Doshi could follow work
rules and deal satisfactorily with the public, co-workers, and
supervisors. Id. at 481. He stated that her anxiety and
depression might somewhat, but not overly, impair Doshi's

ability to carry out job instructions. Id. According to Mr. Cohen, Doshi could maintain her appearance, manner, and social interactions to a satisfactory standard. Id.

In August 2011, Doshi began therapy with psychologist Dr. Franklin. Id. at 563. At the initial consultation, Doshi expressed her dissatisfaction with the denial of SSDI benefits. Id. She said she would like to obtain a GED, a job, and a house. Id. At other appointments, she expressed worry over one of her sons who was in foster care, id. at 557, 559, and another who was being bullied, id. at 555.

In June 2012, Dr. Franklin mentioned that Doshi had marked restrictions in daily activities and social functioning. Id. at 566. In addition, she had moderate impairment in her ability to understand, carry out, and remember instructions, and moderately severe impairment in responding to customary work pressures. Id. at 564. Doshi, however, did not exhibit problems appropriately responding to supervisors and co-workers. Id.

### c. State Agency Assessment

In January 2011, Dr. Lipski, a state agency reviewing physician, remarked that Doshi could lift or carry ten pounds occasionally and slightly less than ten pounds frequently; stand and/or walk two to three hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Id. at 414-15. In Dr. Lipski's opinion, Doshi was limited to occasional grasping

and twisting with her left hand when it came to handling.  Id. at 416.  Furthermore, Dr. Lipski commented that Doshi's visual limitation had not been established.  Id.  Dr. Sandell, another state agency reviewing physician, concurred with Dr. Lipski's entire opinion in May 2011.  Id. at 471.  Additionally, Dr. Carpenter, a state agency reviewing physician, remarked in June 2011 that Doshi was able to perform simple tasks in the workplace.  Id. at 485.  He opined that Doshi could recall and manage simple tasks; maintain focus, pace, and persistence for simple tasks at a reasonable pace; manage appropriate interactions in the workplace; and respond to supervision.  Id.

## 2. Hearing before the Social Security Administration

At the hearing, Doshi testified that she worked at a McDonalds restaurant for fifteen years.  Id. at 34.  She stated that due to symptoms such as tingling and numbness in her hands and feet, she put hot compresses on her arms up to five times a week to alleviate such discomfort.  Id. at 45.  Those symptoms, however, were not continuous since Doshi had periods where she did not experience them.  Id.  When she experienced the MS symptoms, she rapidly became fatigued and only felt productive two or three days during the week.  Id. at 40.  Furthermore, she would run out of breath while walking and needed to take breaks. Id.  When she walked to church about a block away, she did so

very slowly and held on to items like fences or walls to maintain her balance.  <u>Id.</u> at 44.

### C.   Federal Jurisdiction

This Court has jurisdiction over this action pursuant to 42 United State Code section 405(g), granting judicial review of final orders and decisions by the Commissioner of Social Security.  42 U.S.C. § 405(g).

## II.  LEGAL STANDARD

### A. Standard of Review

Upon reviewing the Commissioner's decision, the pleadings and the complete administrative record, this Court has the power to affirm, modify, or reverse the decision of the Commissioner. <u>Id.</u>  The Commissioner's fact findings shall be conclusive if they are supported by substantial evidence.  <u>Id.</u>  This Court must uphold the Commissioner's decision unless a legal or factual error was committed in evaluating a claim.  <u>Manso-Pizarro</u> v. <u>Sec'y of Health & Human Servs.</u>, 76 F.3d 15, 16 (1st Cir. 1996) (quoting <u>Sullivan</u> v. <u>Hudson</u>, 490 U.S. 877, 885 (1989)).  In addition, the First Circuit has stated that "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion," then the Commissioner's findings must be upheld.  <u>Irlanda Ortiz</u> v. <u>Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez</u> v. <u>Sec'y of Health and Human Servs.</u>,

647 F.2d 218, 222 (1st Cir. 1981) (internal quotation marks omitted)). It is not the reviewing court's role, but the Commissioner's, to make credibility determinations and to draw inferences from the record. _Rodriguez_, 647 F.2d 218 at 222. The reviewing court must affirm a commissioner's decision supported by substantial evidence "even if the record arguably could justify a different conclusion." _Rodriguez Pagan_ v. _Sec'y of Health & Human Servs._, 819 F.2d 1, 3 (1st Cir. 1987) (citing _Lizotte_ v, _Sec'y of Health & Human Servs._, 654 F.2d 127, 128 (1st Cir. 1981) (internal quotation marks omitted)).

The hearing officer may not ignore evidence and must consider everything within the record, even facts that diminish the evidence's value. _Diaz_ v. _Sec'y of Health & Human Servs._, 791 F. Supp. 905, 912 (D.P.R. 1992). This Court, on the other hand, can "review the conclusions of law of the administrative judge . . . and may invalidate findings of fact which are 'derived but ignoring evidence, misapplying the law, or judging matters entrusted to experts.'" _Bazile_ v. _Apfel_, 113 F. Supp. 2d 181, 184 (D. Mass. 2000) (quoting _Nguyen_ v. _Chater_, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam)).

### B.   Social Security Disability Standard

The Social Security Act defines disability as a person's "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

A hearing officer must proceed through a five-step analysis to determine whether a claimant is disabled according to the Social Security Administration regulations.  See 20 C.F.R. § 404.1520(a)(1).  First, the hearing officer must determine whether the claimant is engaged in substantial gainful activity. Id. § 404.1520(a)(4)(i).  Substantial work activity "involves doing significant physical or mental activities," id. § 404.1572(a), and gainful work activity describes work "done for pay or profit, whether or not a profit is realized," id. § 404.1572(b).  If the hearing officer finds that a claimant is not performing substantial gainful activity, then the hearing officer proceeds to the second step, where the medical severity of the claimant's impairment or combination of impairments is considered.  Id. § 404.1520(a)(4)(ii).  An impairment or combination of impairments is severe if it significantly limits one's physical or mental ability to do basic work activities. Id. § 404.1520(c).  Furthermore, the result of the impairment in question should have death expectancy, or it should have lasted or be expected to last continuously for a period of 12 months. 20 C.F.R. § 404.1509.

After determining that the claimant's impairment or combination of impairments is severe, the hearing officer proceeds to the third step, where the medical severity of the claimant's impairment is considered under specific criteria. Id. § 404.1520(a)(4)(iii). If the claimant's impairment meets or is equivalent to one of the listings in the regulation's appendix and meets the duration requirement, then the claimant will be deemed disabled. Id. If the claimant is deemed disabled, the analysis stops. But if the claimant does not meet the listing requirement, the hearing officer proceeds to step four where the residual functional capacity of the claimant will be evaluated. Id. § 404.1520(a)(4)(iv). The residual functional capacity is the claimant's remaining capability of functioning in a workplace setting despite his or her limitations. Id. § 404.1545(a)(1). During such evaluation, all medically determinable impairments are considered, including those that are not severe. Id. § 404.1545(a)(2). Moreover, the claimant's ability to "meet the physical, mental, sensory, and other requirements of work" is also considered. Id. § 404.1545(a)(4). If the claimant has met his or her burden to prove disability in those first four steps within the Act, then the burden of proof shifts to the hearing officer to establish the final step – that the claimant is able to engage in some other substantial gainful activity that exists in significant

numbers in the national economy.  Goodermote v. Sec'y of Health
& Human Servs., 690 F.2d 5, 7 (1st Cir. 1982).

### C.  The Hearing Officer's Decision

The hearing officer denied Doshi's applications after
evaluating her claims under the five-step analysis of the Social
Security Act.  Admin R. at 28.  At step one, he found that Doshi
met the insured status requirements of the Act through June 30,
2010.  Id. at 18.  Continuing to step two, he found that Doshi
had not been engaged in substantial gainful activity since June
1, 2007.  Id.  The hearing officer then went on to step three
where he found the following severe impairments: Post Traumatic
Stress Disorder ("PTSD"), depression, anemia, and "MS-like
symptoms."  Id. at 19.  None of those severe impairments nor
their combined effects, however, were equivalent to the severity
impairments listed under the applicable regulations.  Id.
Although he could have stopped after that finding, the hearing
officer continued with step four and found that Doshi had the
residual functional capacity to perform sedentary work under the
regulations.  Id. at 21.  He stated that Doshi has the ability
occasionally to climb, balance, stoop, kneel, crouch, or crawl.
Id.  Even though she only had occasional handling ability, she
possessed unlimited reaching ability in all directions and
unlimited fingering and feeling ability.  Id.  Doshi's work was
limited to occasional interaction with the public, co-workers,

and supervisors as well as the performance of simple, routine, and repetitive tasks.  Id.

Although the hearing officer's findings after step four were sufficient to preclude disability and deny benefits, he nevertheless continued to step five of the analysis.  At step five, he questioned a vocational expert to determine whether jobs existed in the national economy for Doshi based on her residual functional capacity.  Id. at 27.  The vocational expert testified that based on Doshi's residual functional capacity, jobs such as weight tester, addresser, and dowel inspector were sedentary jobs in Massachusetts she could perform.  Id. at 28. After the hearing officer's evaluation of Doshi's applications under the Social Security Act regulations, he determined that Doshi was not disabled.  Id.

III.  ANALYSIS

Doshi argues that the hearing officer improperly implied the "Avery criteria" to her case and improperly questioned the vocational expert.  Pl.'s Memorandum 7 (citing Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 23 (1st Cir. 1986)). Doshi claims that her subjective complaints and credibility were not properly evaluated because the hearing officer claimed that her limitations were not "entirely credible" based on the inconsistencies with the residual functional capacity assessments.  Id.  Moreover, Doshi claims that the hearing

officer's question to the vocational expert was improper because
he altered Doshi's abilities at some point in his hypothetical
question resulting in a response that ignored the medical
evidence provided.  Id. at 10.

### A.    Subjective Complaints and Credibility Evaluation

Doshi argues that the hearing officer mischaracterized her
testimony regarding her difficulties in conducting her daily
activities.  Id. at 7.  Doshi cites to the hearing officer's
summary of activities of daily living that appears in the
administrative record on page 20, id. at 9, which is taken
directly from Doshi's June 2011 statements to Emrie Cohen, M.
A., a consultative examining psychologist.  Compare Admin R. at
20 with id. at 475.  In her testimony, Doshi explained that she
gets very fatigued at times and her MS-like symptoms of numbness
and tingling keep relapsing and remitting.  Id. at 39.  Doshi
claims that those difficulties are consistent with the multiple
sclerosis diagnosis by both her primary care physician and her
treating neurologist.  Pl.'s Memorandum 5.  Doshi suggests that
the hearing officer did not specifically evaluate every single
one of her statements regarding her activities of daily living.
Id. at 10.

The hearing officer, however, is not required to, nor could
he reasonably be expected to, discuss every piece of evidence in
the record.  Sousa v. Astrue, 783 F. Supp. 2d 226, 234 (D. Mass.

2011) (citing <u>National Labor Relations Bd.</u> v. <u>Beverley Enters.-Mass.</u>, 174 F.3d 13, 26 (1st Cir. 1999)); <u>see also</u> <u>Brault</u> v. <u>Social Sec. Admin., Comm'r</u>, 683 F.3d 443, 448 (2d Cir. 2012) (per curium) (quoting <u>Black</u> v. <u>Apfel</u>, 143 F.3d 383, 386 (8th Cir. 1998)) ("[A hearing officer] does not have to state on the record every reason justifying a decision . . . '[a hearing officer] is not required to discuss every piece of evidence submitted. [A hearing officer]'s failure to cite specific evidence does not indicate that such evidence was not considered.'").

The Social Security regulations acknowledge that a claimant's reported symptoms of pain can be more severe or impose greater functional restrictions than can be demonstrated by objective medical evidence alone. <u>Rasmussen-Scholter</u> v. <u>Barnhart</u>, No. 03-11889-DPW, 2004 WL 1932776, at *9 (D. Mass. Aug. 16, 2004) (Woodlock, J.) (citing 20 C.F.R. § 404.1529(c)(3)). Thus, there are seven factors under the regulations for a hearing officer to evaluate a claimant's subjective complaints. These factors are:

    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness and adverse side effects of any medication taken to alleviate the pain or other symptoms;
    (5) treatment, other than medications, received to relieve pain;

> (6) any measures other than treatment the claimant uses to
> relieve symptoms (e.g. lying flat or standing
> periodically); and
> (7) any other factors relating to the claimant's functional
> limitations and restrictions due to pain.

Avery, 797 F.2d at 28-29 (1st Cir. 1986). According to Doshi,

the hearing officer failed to follow these standards properly

because her subjective complaints are consistent with her

doctor's diagnosis. Pl.'s Memorandum 8.

Doshi was not credible to the extent she testified to

greater limitations than those reflected in the hearing

officer's final residual functional capacity determination. The

hearing officer has the responsibility to weigh conflicting

evidence and resolve issues of credibility. Seavey v. Barnhart,

276 F.3d 1, 10 (1st Cir. 2001); Rodriguez, 647 F.2d at 222.

Additionally, the hearing officer "must be sufficiently specific

to make clear to the individual and to any subsequent reviewers

the weight the adjudicator gave to the individual's statements

and the reasons for that weight." Hooke v. Colvin, 20 F. Supp.

3d 286, 295 (D. Mass. 2014). The hearing officer concluded that

Doshi's symptoms do not hinder her from activities based on the

fact that Doshi cares for her infant son and carries out

household chores. Admin R. at 26. In addition, Doshi quit her

job in 2005 because she refused to work where "people are

unprofessional." Id. at 24. Though she slipped on a wet floor

and hurt her back, Doshi does not allege any significant back
impairment.

The hearing officer's credibility determination, in
general, is supported by the opinions of state agency reviewing
psychologist Dr. Carpenter, id. at 483-99, and state agency
reviewing physician Dr. Lipski, id. at 413-20. The Social
Security regulations provide that state agency reviewing
physicians and psychologists such as Drs. Carpenter and Lipski
must be viewed as "highly qualified physicians [and]
psychologists ... who are also experts in Social Security
disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Doshi
does not contest Dr. Carpenter's mental residual functional
capacity opinion from June 2011, which is parallel to the
hearing officer's findings. In addition, Dr. Lipski's opinion
as to Doshi's residual functional capacity is also consistent
with the hearing officer's, which is that Doshi can do sedentary
work as defined by the regulations. Id. at 27.

The regulations provide that the Agency generally ought
follow the opinions of sources such as psychologists and
physicians who understand the Agency's disability programs and
their evidentiary requirements, who are familiar with the
claimant's case record, and who support their opinions with
specific evidence and explanation. 20 C.F.R. § 404.1527(c)(6).
Accordingly, the hearing officer accorded more weight to Dr.

Carpenter and Dr. Lipski's opinions when evaluating Doshi's claim. Id. at 26. Doshi's argument is therefore unfounded when she claims that the hearing officer "improperly substituted his medical opinion for that of the medical professionals." Pl.'s Memorandum 10. In addition, the credibility determination is not a medical determination, but a process that considers all of the medical and non-medical evidence. SSR 96-7P, 1996 WL 374186, *2 (July 2, 1996). The hearing officer's credibility determination decision has to be sufficient to bring "a reasonable mind" to accept that such determination is supported by substantial evidence and is conclusive. See Richardson v. Perales, 402 U.S. 389, 401 (1971) (defining the substantial evidence standard of review).

Doshi does not establish an error of law by stating that the hearing officer mischaracterized her testimony. Pl.'s Memorandum 9. The hearing officer explicitly recognized Doshi's need to take breaks while doing household chores. Admin R. at 22. Doshi, nevertheless, fails to demonstrate how her ability to do a full range of household chores with breaks is inconsistent with the sedentary residual functional capacity to which the hearing officer limited her. In other words, a "reasonable mind" can find that Doshi's activities of daily living support the hearing officer's conclusion. See Richardson, 402 U.S. at 401. Doshi's arguments regarding her

activities of daily living and her arguments regarding credibility are ineffective because substantial evidence supports the hearing officer's credibility determination.

Doshi seems to argue that the hearing officer's credibility determination regarding her alleged multiple sclerosis diagnosis is erroneous. Pl.'s Memorandum 6. Nevertheless, Doshi fails to illustrate how such diagnosis is relevant to the hearing officer's overall determination. "A mere diagnosis of a condition 'says nothing about the severity of the condition.'" White v. Astrue, No. 10-10021-PBS, 2011 WL 736805, at *6 (D. Mass. Feb. 23, 2011) (Saris, J.) (quoting Higgs v. Bown, 880 F.2d 860, 863 (6th Cir. 1988)). Furthermore, there is no requirement that the hearing officer must accept all of the claimant's subjective complaints as true. As Doshi herself acknowledges, he can set them aside if he finds evidence that the claimant "has exaggerated or manifested symptoms that are inconsistent with her diagnosis." Pl.'s Memorandum 8. Doshi does not show that the hearing officer's credibility determination could not be reached by a "reasonable mind" based on the sufficient evidence used to make his decision.

Doshi fails to recognize that the purpose of this Court's review of the hearing officer's ruling is to determine whether there was an error in his evaluation of her disability claim, not to re-weigh the evidence in the record. Doshi's credibility

argument amounts to nothing more than an attempt to assemble evidence that she views as supportive of her preferred conclusion of disability. Doshi fails to consider that the hearing officer is not obliged to accept as true her self-serving subjective statements. Biachi v. Sec'y of Health and Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) (per curiam) (citation omitted); see also Perusse v. Astrue, No. 10-30065-KPN, 2011 WL 1870590, at *6 (D. Mass. Apr. 25, 2011) (Neiman, M.J.) ("[The hearing officer] is not required to accept subjective complaints at face value; rather, the [hearing officer] must measure such complaints against the record as a whole.").

The administrative record demonstrates that the hearing officer considered much of the evidence that Doshi argues he misconstrued. For example, the hearing officer considered Doshi's assertion that her memory is impaired and she needs to write things down in order to remember them, Admin R. at 22; the report of consultative psychological examiner Mr. Cohen, id. at 24-25; Doshi's preference for natural treatments over prescription medication, id. at 22; and Doshi's assertion of deficient vision, id. at 24. The hearing officer is not required to discuss and reconcile every shred of conflicting evidence. Brault, 683 F.3d at 448; Sousa, 783 F. Supp. 2d at 234. Additionally, some of Doshi's evidence, such as evidence

of vision problems, points to no medical opinion that would support an assertion that the impairment limits her ability to do "basic work activities" as defined by the regulations. Indeed, state agency reviewing physician Dr. Lipski concluded that Doshi established no visual limitation.  Admin R. at 416. Doshi bears the burden of producing persuasive evidence of the severity of her impairments, which she failed to do.

### B. Improper Question to the Vocational Expert

Doshi states that the hearing officer posed a question to the vocational expert that ignored the medical evidence and altered her abilities in order to obtain a certain result. Pl.'s Memorandum 10.  Doshi's argument to reverse the hearing officer's decision based on his hypothetical question to the vocational expert is unpersuasive because, even if the question was improper, she failed to prove her disability claim before the burden of proof shifted to the hearing officer to show that she can do other work.  See Goodermote, 690 F.2d at 7.  Even though the hearing officer went through the five-step analysis of the Social Security Act, he was not required to go beyond step four after Doshi failed to prove she was disabled.  Id. According to the hearing officer, Doshi did not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments in the regulations during the third step of the analysis.  Admin

R. at 19.  Nonetheless, he continued through step four and step five of the analysis demonstrating a thorough evaluation of Doshi's claim.  Id. at 21-28.

Doshi argues that the Agency has "the burden of coming forward with evidence of specific jobs in the national economy that . . .[the claimant] can perform."  Pl.'s Memorandum 10 (quoting Arocho v. Sec'y Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982)).  Doshi further cites to Arocho for the proposition that "in order for a vocational expert's answer to a hypothetical question to be relevant, the inputs into that hypothetical must correspond to conclusions that are supported by the outputs from the medical authorities."  Pl.'s Memorandum 10 (quoting Arocho, 670 F.2d at 375 (1st Cir. 1982)).

During the hearing, the vocational expert, Mr. Matzilovich, testified that a person who is limited to occasional handling would not be employable in the national or regional economy. Admin. R. at 50-51.  Doshi claims that, upon hearing such testimony, the hearing officer immediately changed the parameters of his questions, indicating that he wanted to know if there were jobs that could be done when a person was limited to "frequent handling."  Id. at 51.  Doshi argues that the question with such limitation was without support, which made the hypothetical inaccurate and the answer erroneous.  Id. Doshi argues that by posing such a hypothetical question, the

hearing officer erred because "Social Security proceedings are inquisitorial, rather than adversarial. It is the [hearing officer]'s duty to investigate the facts and develop the arguments both for and against granting benefits." Id. (citing Sims v. Apfel., 530 U.S. 103, 110-11 (2000)).

The hearing officer supported his hypothetical question by recognizing explicitly that Doshi's primary care physician, Dr. Brackett, found that she had no limitation as to repetitive handling. Admin. R. at 25. The hearing officer's hypothetical question to the vocational expert was consistent with that of the residual functional capacity determination. Thus, substantial evidence supports the hearing officer's reliance upon the vocational expert's testimony during step five of the analysis of Doshi's claim. See Schmidt v. Astrue, 496 F.3d 833, 846 (7th Cir. 2007) ("[The hearing officer] is required only to incorporate into his hypotheticals those impairments and limitations that he accepts as credible."); Greene v. Astrue, Civ. No. 11-30084-KPN, 2012 WL 1248977, at *4 (D. Mass. Apr. 12, 2012) (Neiman, M.J.).

Doshi's assertion that the hearing officer committed an error by asking his hypothetical question is unfounded since the question was supported by substantial evidence. Additionally, raising hypothetical questions is particularly appropriate when the hearing officer reevaluates all of the evidence after the

hearing is over before reaching his final decision.  Admin R. at
32.  The hearing officer did not exhibit any bias against Doshi
with his questions.

Overall, Doshi's arguments to this Court to reverse the
hearing officer's decision are either unfounded or inaccurate.
The hearing officer did not mischaracterize her testimony and he
evaluated most of her subjective complaints.  Furthermore, the
hearing officer properly questioned the vocational expert with
his hypothetical questions and did not display any bias against
Doshi.

## IV.  Conclusion

For the reasons articulated above, this Court DENIES
Doshi's motion to reverse and remand the decision of the
Commissioner, and GRANTS the Commissioner's motion to affirm the
Commissioner's decision. Judgment shall enter for the
Commissioner.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE
